## JAMES FRANKS v. D. W. HOUSTON, *et al.*

1. BANKRUPT LAW; *Filing Petition; Commencement of Proceedings.* Creditors of a bankrupt presented to the Judge of the U. S. District Court, at the office of the register of bankruptcy, a petition, alleging acts of bankruptcy, asking an adjudication of bankruptcy, and other relief. The judge thereupon granted three orders, one for injunction, one for arrest, and one for the provisional seizure of the property. At the same time the register noted on the back of the petition the day and the hour of its presentation, and on the next day forwarded it to the clerk of the court, who, on receipt thereof, signed his name to the indorsement made by the register; *held*, that at the time the register made his indorsement and the judge made his orders, the petition was filed within the meaning of section 38 of the bankrupt law.

2. TITLE OF ASSIGNEE—*From what Time it Dates.* Proceedings in bankruptcy will be considered and held as commenced from the time of presentation of the petition therefor to the Judge of the U. S. District Court; and the title of the assignee in such proceedings, to the property of the bankrupt, must be treated as dating from that time.

*Error from Leavenworth District Court.*

TRESPASS, brought by *Franks*, against *D. W. Houston* and *James C. Fenlon*, to recover the value of a stock of goods taken and carried away. *Franks* was a constable of Leavenworth township, and as such constable, at 10.15 A.M., of February 6th, 1871, he went to the store and salesroom of C. Liebenstein & Co., dry-goods merchants in said township, and levied an execution issued to him as such constable by a justice of the peace, (upon a judgment in favor of Isaac Maidhoff and against Liebenstein & Co.,) upon certain goods, wares and merchandise, and took the same into his possession. About a half an hour afterward, *D. W. Houston*, U. S. Marshal for the District of Kansas, entered said premises of Liebenstein & Co., and claimed all the estate of said Liebenstein & Co. by virtue of a provisional warrant of seizure in bankruptcy. He took all the stock, and refused to allow *Franks* to remove the goods he had levied upon, under said execution, but took them from him against his will, and refused to deliver them to *Franks*, as constable. *Houston* turned the stock of goods over to *James C. Fenlon*, the other defendant.

in error, as assignee in bankruptcy of Liebenstein & Co.,
including those upon which *Franks* had levied. *Fenlon*
knew of the levy being made, and *Franks*, as constable, made
frequent demands of him, as such provisional assignee, for
the goods levied upon, but he refused to surrender them to
*Franks*, but converted them into money. Being unable to
repossess himself of the goods levied upon, *Franks* brought
this action in the district court of Leavenworth county to
recover their value. The question in the case was the
priority of title. The action was tried at the November
Term 1871. The district court made separate findings of
fact and law. One of the findings of fact was, that proceed-
ings in bankruptcy, under which *Houston* had possession of
the goods, had been duly commenced at 9.15 A.M., of Feb-
ruary 6th, 1871, and as conclusions of law the court found as
follows:

"That the presentation of said petition to the Judge of the
United States Court, and the indorsement on the back thereof
by the register, of the time when presented, was sufficient to
confer jurisdiction on said judge to make said orders, and the
order to the defendant *Houston* to take possession provision-
ally of the goods, wares and merchandise of said firm, pro-
tected the latter in taking the possession of the goods of said
firm, as stated in the findings of fact herein, and that the
proceedings in bankruptcy should be considered as commenced
from the time of the presentation of the petition aforesaid to
the judge of said district court, and therefore that the title of
the defendant *Fenlon*, as assignee, must be treated as dating
from that time, and consequently is prior and superior to the
lien acquired by the levy made by the plaintiff under his
execution, and the plaintiff is not entitled to recover against
either of the defendants."

Judgment was given in favor of the defendants, and
*Franks* brings the case here on error.

*H. M. Herman*, for plaintiff in error:

1. Plaintiff in error claims that upon the findings of fact
he is entitled to a verdict; that the conclusion of law is
erroneous. The judgment in favor of Maidhoff was obtained

without any fraud or collusion with Liebenstein & Co., and the court below so finds. By virtue of the levy and seizure made by Franks, as constable, the goods were then *custodia legis*. The marshal at the time of seizure acted at his peril, and if he took property not belonging to the debtor, but in the custody of a state court, he was guilty of trespass. The alleged creditor's petition was not filed in the office of the clerk of the U. S. district court until the day after the entry of judgment and the levy, and the U. S. bankruptcy court could acquire no jurisdiction until the petition had been filed in the office of the clerk of the U. S. district court.

That the possession by Franks, as constable, was the possession of the court by whose command he seized it, and that possession cannot be interfered with by any other court—see Miller's Dec., 324; 4 East, 523; 3 Hare, 472; 3 McN. & G., 104; 4 Hill, 152; 17 Johns., 128; 20 Wend., 41, 228; Crocker on Sheriffs, 102, 431–449; 1 Benedict, 128; 34 Ala., 101; Drake on Attachments, §§ 267, 290, note 2.

Goods taken possession of by an officer, under an execution regular on its face, issued by proper authority, on a valid judgment, are then in the custody of the law, and it would be repugnant to sound principles to permit them to be taken out of such custody. *Westenberger v. Wheaton*, 8 Kas., 169; 5 Mass., 283; 36 N. Y., 446; 7 Wis., 329; 7 Cal., 35. The possession of the bankrupt court was that of the debtors; and they could not, nor could any court, issue process to return to the debtor goods taken on final process and then in the custody of the law by a levy and valid execution. A federal court cannot, by its process, take from the custody of a state court property which the state court by its legal process and in exercise of its power has acquired jurisdiction, so as to give the federal court jurisdiction of such property. The property, when levied on by the officer of the state court, was in the custody of the law, and that is the forum where this contest is to be settled, because that court has exclusive jurisdiction of this litigation. 21 Vt., 147; 3 Ohio St., 105; 3 Wis., 145, 622; 7 Wis., 329.

2. The principle, *Qui prior est tempore, potior est jure*, applies to this case. Coke Litt., 149; 1 Story Eq. Jur., § 64*d;* Story Bail., § 312; 1 Smith Lead. Cases, 4 ed., 440; 24 Miss., 208; Broom Maxims, §§ 351, 353. The court below finds that the order was issued by the U. S. Judge in Leavenworth a day before the petition was filed in his court; and also that Liebenstein & Co. were not adjudicated bankrupts until March 21st 1871, more than six weeks after the levy. The judge had no power to issue the order until the papers were filed in court.

It is claimed that the petition in bankruptcy was filed at fifteen minutes past nine o'clock on the 6th of February, about three-fourths of an hour before the levy. That makes no difference in this case, even were it true, for if filed in the U. S. district court at Topeka, a warrant could not have been issued on it, signed by the judge, who was not in Topeka, and have reached Leavenworth in three-quarters of an hour. Judge Miller, in a similar case, page 328 of Miller's Circuit Court Decisions, says: "No court is bound to take judicial notice of the proceedings of another court. The state court can have no knowledge, or even notice, of the proceedings in the federal courts by which its right to possess and adjudicate the property in question is affected. It should be informed in a proper manner of those proceedings before its possession is interfered with or assailed." The adjudication in bankruptcy being six weeks after the levy and judgment, could only take effect from that time.

The commencement of proceedings in bankruptcy is the commencement of a suit in the U. S. district court; 4 Bump, 51; 2 Bank. R., 92. This was not done until the 7th of February. The bankrupt law provides that creditors may file an application in the district court of the United States, but no authority is given in the act to file it with a register. 3 Bump, 3; 4 id., 27. The proceedings are commenced by filing with the clerk of the court. Sec. 47 of the bankrupt law, and Rule 1, of the General Orders in Bankruptcy, promulgated by the supreme court of the United States, provide that the

clerks of the district courts shall enter upon each petition in bankruptcy the day and the hour of the day upon which the same shall be filed. By Rule 4 it is provided as soon as any adjudication of bankruptcy is made upon a petition filed in case of involuntary bankruptcy, the petition shall be referred to one of the registers in such manner as the district court shall direct. So that the finding that the petition was filed with the register in bankruptcy on the 6th could not give any jurisdiction under the bankrupt law. The time it was filed with *the clerk*, was the commencement of proceedings, and that the court below finds was on the 7th of February, the day after the levy by Franks. It is not until the petition is filed *in court* that the statute declares that the property shall be divested. 3 Bump, 285, note *v;* 3 Bank. R., 131; 3 Am. L. Times, 55:

3. The bankrupt law does not discourage diligence in the collection of debts. Creditors who have obtained a lien by a legitimate effort to collect an honest debt, must be permitted to enjoy the advantage gained by their diligence. 2 Bank. R., 124, 155; 7 Am. L. Reg., 100, 214; 3 Bump, 409. A levy that is good, and creates a valid lien under the state laws, will be valid even in a bankrupt court. The bankrupt law does not divest liens *acquired* and *consummated* before the adjudication in bankruptcy. 2 Bank. R., 71, 150; 2 Benedict, 44, 432; 2 Law T., 761. Franks, as constable, had by virtue of his levy a special and vested right in the property seized. A party cannot be deprived of a vested right by legislative enactment. 30 Ala., 126; 9 Gill., 299; 7 Johns., 477; 45 Ill., 179; Sedg. Const. Law, 671 to 683.

*Clough & Wheat,* and *Stillings & Fenlon,* for defendants:

In § 1 of the act of congress entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved March 2d, 1867, the following language occurs: "The said courts (referring to district courts of the U. S. as courts of bankruptcy,) shall always be open for the transaction of business under this act, and the powers and jurisdiction

hereby granted and conferred shall be exercised as well in vacation, as in term time; and a judge sitting at chambers shall have the same powers and jurisdiction, including the power of keeping order, and of punishing any contempt of his authority, as when sitting in court." By § 14 of said act, the title of the assignee is made to relate back to the commencement of the proceedings. (Section 42 of the act gives similar effect to proceedings in *involuntary* bankruptcy.) It was proper for blank process to be by the clerk of the court left with the register. See No. 2, of the General Orders in Bankruptcy of the supreme court of the U. S.

Neither the writs, the warrant, and other process mentioned in the answer, nor the appointment of assignee therein mentioned, were denied under oath; therefore, as such writs were "instruments of writing," the allegations of the making of the same, as well as the averments of the appointment of assignee, should of course be taken as true, under § 108 of the code; but whether so or not, the finding shows sufficient to sustain the conclusion of law.

By the commencement of the proceedings before the judge of the court of bankruptcy, before the levy by the constable, that court (the bankrupt court) obtained jurisdiction of the property, which could not lawfully be taken from it by the constable under the execution mentioned in the findings. Bump on Bankruptcy, (4th ed.,) 275–277; 11 Howard, 142; 18 id., 506; 20 id., 583; 1 Woolworth, 324. We suppose there can be no reasonable question but that under the above copied part of § 1 of said act, the judge of the U. S. district court had quite as much power and jurisdiction, to proceed with the case, when the creditors' petition was presented to him at 9:15 A.M., on the 6th February 1871, as he or the court would have had if the clerk of that court had then marked the time of filing thereon. And further about the matter of filing, see Burrill's Law Dic., 489, "To File;" 4 Ohio, 83, 88; Sec. 38, of the Bankruptcy Act, and General Order No. 1, Bump on Bankruptcy (4th ed.,) 545. If the clerk was not present, or, if from any cause he failed or could

not make the file-mark at the time when the jurisdiction was invoked, such absence or failure of his, of course could not affect the jurisdiction or power of the court or judge.

We submit that when the petition in bankruptcy was presented to Judge Delahay at chambers, the proceedings in bankruptcy *were commenced*—if not, *when* were they commenced? Was it when the court made the several orders of seizure, injunction and arrest mentioned in the findings of the court? If so, then the proceedings in bankruptcy were commenced before the judgment was rendered by the justice, much more before the execution was issued, or levy made by the constable. If not so, then we have the anomalous spectacle presented of a court making orders in a case, which had not yet been commenced. Now, § 14 of the bankrupt act says "such assignment shall *relate back* to the commencement of said proceedings in bankruptcy."

And further, in this connection, we would ask, what is "filing" a petition? Certainly the clerk's indorsement on the back of the petition, is not *filing;* it is the mere evidence, or memorandum of the clerk of *the time of filing.* Burrill says, (Law Dict., p. 489,) "the *filing of a paper* is considered as *an exhibition* of it to the court"—and what plainer exhibition to the court, than such a presentation of it as causes the court to make orders upon it, and in accordance with the prayer contained therein? We think, therefore, there should be no doubt, but that the proceedings in bankruptcy were commenced at fifteen minutes past nine o'clock in the forenoon of the 6th of February, 1871; at least three-quarters of an hour before any execution-levy could possibly have been a lien on the goods of Liebenstein & Co.; that, therefore, the bankruptcy court alone had control over the goods of said bankrupts—and that the decision of the district court was correct in so holding.

The opinion of the court was delivered by

BREWER, J.: A single question is all that is involved in this case. At what time did proceedings in a certain case in

bankruptcy commence? This is presented as a question of law, for the facts are undisputed. These facts are contained in the 2d and 5th findings of fact made by the district court, which are as follows:

"2d. On the morning of the same day, that is, at the hour of nine o'clock and fifteen minutes, on the forenoon of February 6th, 1871, certain creditors of the said firm of Charles Liebenstein & Co., who were then merchants engaged in business, and residents in the city of Leavenworth, in this county, presented a petition in due form, and regular in all respects, to the Hon. Mark W. Delahay, Judge of the District Court of the United States for the District of Kansas, alleging acts of bankruptcy on the part of said firm, and asking that they might be adjudged bankrupts, and that such other proceedings might be had as authorized and provided for by the bankrupt law. And the Judge of said United States District Court, thereupon, at the hour last above stated, at the office of the Register of Bankruptcy for this district, in said city, made and granted three several orders—one for the injunction, one for the arrest of the members of said firm, and one directing the defendant Houston, who was then, and still is Marshal of the United States for said District, to forthwith take possession, provisionally, of all the goods, wares, merchandise, and property of said firm; and the said Judge fixed the amount of bail to be given on said order of arrest at $10,000.

"5th. At the time said petition was presented to the aforesaid Judge of the United States District Court, and the said orders thereon were made as aforesaid, Hiram Griswold, Register in Bankruptcy for this district, noted on the back of said petition, the hour of said day, to wit, nine o'clock and fifteen minutes; but the said petition had not then, nor was it until the following day, sent to and filed in the office of the clerk of said district court, at Topeka, on which last-named day said clerk signed his name to the indorsement of filing made as aforesaid by said register on the back of said petition."

These proceedings in bankruptcy were carried on to successful consummation, and Liebenstein & Co. adjudged bankrupts. The title under which the plaintiff in error, plaintiff below, claims, dates from ten o'clock and fifteen

minutes on the morning of February 6th 1871, or an hour later than the time of issue of the orders in bankruptcy. By § 14 of the bankrupt act the title of the assignee in cases of voluntary bankruptcy relates back to the *commencement of the proceedings*, and by § 42 a like effect is given to proceedings in involuntary bankruptcy. The first paragraph of § 38, reads:

"SEC. 38. *And be it further enacted*, That the filing of a petition for adjudication in bankruptcy, either by a debtor in his own behalf, or by any creditor against a debtor, upon which an order may be issued by the court or by a register in the manner provided in section four, shall be deemed and taken to be the commencement of proceedings in bankruptcy under this act."

When was the petition filed in this case? An examination of the indorsement over the signature of the clerk shows that it was on February 6th 1871, at 9.15 A.M. But this indorsement is not a record, so as to import verity, and conclude the parties. Going back of the indorsement the facts are, that while the petition was in the hands of the judge and register at that time, and while process was then issued thereon, it did not reach the clerk or clerk's office till the next day. The indorsement, excepting the signature of the clerk, was made by the register at the time he received the petition. Was that a "filing," within the meaning of the section quoted? "A paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file." 1 Bouvier's Law Dict., 524. The indorsement is not the filing. It is simply evidence of it. The clerk of a court is the custodian of its papers and records. To him must be delivered any paper which is to belong to the files of that court. The commencement of proceedings in bankruptcy is the commencement of a suit in the district court. *In re, Adams*, 2 Bank. Reg., 92. "The clerks of the several district courts shall enter upon each petition in bankruptcy, the day, and the hour of the day, upon which the same shall be filed, and shall also make a similar note upon every subsequent paper filed with them; and the papers in each case shall be kept in

a file by themselves." General Orders in Bankruptcy No. 1. If this was all that bore upon the question, it would be one of little difficulty, and we should be compelled to hold that the filing did not take place until the 7th of February, the time the petition reached the clerk's office. And this is the rule applicable to every other court, and to almost every other class of cases. But bankruptcy proceedings are *sui generis;* and we are satisfied that this petition was filed at the time it passed into the hands of the judge and register, and on it process had been issued. By the first section of the bankrupt law, the district courts are constituted courts of bankruptcy. "The said courts shall always be open for the transaction of business under this act, and the powers and jurisdiction hereby conferred shall be exercised as well in vacation as in term time, and a judge sitting at chambers shall have the same powers and jurisdiction * * * as when sitting in court. * * * Said courts may sit for the transaction of business in bankruptcy at any place in the district, of which place and the time of holding court they shall have given notice, as well as at the places designated by law for holding such courts." Bankrupt Law, § 1. It seems from this that not only is the bankrupt court always open, but that it may be a movable court. It is said the clerk's office and the clerk follow the court; but for the transaction of other than bankruptcy business the clerk's office is stationary, at the place designated by law. But the holding of court necessitates the filing of papers, and the issue of process. The one can make little progress without the other. Hence it appears at the very outset of the bankrupt law, that congress contemplated the necessity of filing papers otherwise than by delivering them to the clerk, at his stationary office, although it provided that such office should be their final place of custody. To make more serviceable this bankrupt law, a new officer, a register in bankruptcy, was created, with functions partly judicial and partly ministerial. At his office, and by him, is transacted a large proportion of the bankrupt business. General Order No. 2 reads as follows:

"All process, summons, and subpœnas, shall issue out of the court, under the seal thereof, and be tested by the clerk; and blanks with the signature of the clerk and seal of the court may upon application be furnished to the registers." If the petition must pass to the clerk's office before process may issue, why leave blanks elsewhere than at that office? Furnishing registers with blank processes, signed and sealed, gives them authority to use them. But the issue of process implies a case in court, the filing of a petition. Again by General Order, and in § 4 of the law, a memorandum of all acts by a register must be made, entered in a docket of his own, and forwarded by at least the mail of the subsequent day to the clerk, to be by him entered in a minute book of proceedings in bankruptcy. These proceedings are entered in this book as of the date of performance by the register, and not of the date of receipt by the clerk. In other words, the record of the clerk tallies in point of time with the acts of the register. A similar requirement obtains in regard to papers. See General Order No. 7. There are other provisions of the bankrupt law which bear with more or less force upon this question, and which point in a similar direction to those last quoted. The judge of the U. S. court, when he ordered process to issue in this case, evidently considered that the petition was filed. We understand that a like practice exists in other districts. While the construction of a federal law by the federal courts, other than the supreme, is not conclusive, it is nevertheless entitled to careful consideration; and where that construction generally prevails it will have great influence with us in coming to a decision. The judgment of the district court will be affirmed.

All the Justices concurring.